IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARY KLOTZ,  )
   )
       Plaintiff,  )
   )
vs.  )  Case No. 17-cv-492-JPG-CJP
   )
NANCY A. BERRYHILL,  )
Acting Commissioner of Social Security,  )
   )
       Defendant.  )

## **MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff Mary Klotz seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

### **Procedural History**

Plaintiff applied for DIB in May 2013 alleging a disability onset date of August 12, 2011. (Tr. 276-78.) The agency denied her application at the initial level and again upon reconsideration. (Tr. 169-99.) Plaintiff requested an evidentiary hearing, which Administrative Law Judge (ALJ) Thomas Auble conducted in March 2016. (Tr. 39-96.) ALJ Auble issued an unfavorable decision thereafter. (Tr. 18-38.) The Appeals Council denied review, rendering the ALJ's decision the final agency decision. (Tr. 1-6.) Plaintiff exhausted her administrative remedies and filed a timely Complaint in this Court (Doc. 1).

### **Issues Raised by Plaintiff**

Plaintiff argues the ALJ erroneously ignored medical evidence related to plaintiff's right shoulder impairment; erred in failing to list plaintiff's affective disorder as a severe impairment; and improperly assessed plaintiff's symptoms.

## Applicable Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but that the impairment is neither listed in nor equivalent to the impairments in the regulations— failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be

disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## **The ALJ's Decision**

ALJ Auble determined plaintiff met the insured status requirements through September 30, 2018, and had not engaged in substantial gainful activity since August 12, 2011, the alleged onset date. (Tr. 23.) Plaintiff had severe impairments of small fiber neuropathy, reflex sympathetic dystrophy, and degenerative joint disease of the right hip. (Tr. 24.) Plaintiff had the residual functional capacity (RFC) to perform sedentary work with several exceptions. (Tr. 26-27.) The ALJ opined plaintiff was capable of performing past relevant work and was therefore not disabled. (Tr. 32-33.)

**The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

In her agency forms, plaintiff alleged that chronic regional pain disorder, arthritis, reflex sympathetic disorder, and twisting of the upper spine limited her ability to work. (Tr. 308.) She stated she had pain in her right hip and down her right leg that spread to her lower back. She also experienced numbness of her right thigh, right foot, and right leg. Plaintiff had pain in her right arm that limited her ability to lift and reach. She had trouble walking, sitting, or standing for long periods and used a cane or crutches to ambulate at all times. She needed to change positions frequently throughout the day. Plaintiff suffered from fatigue and decreased energy. She took Flexeril, Meloxicam, Naproxen, and Percocet, which caused memory problems and occasional nausea. Plaintiff did not prepare meals because it required too much standing and weight-bearing and she could not lift pans or bowls. She could not perform household chores or yard work because those tasks required too much standing, walking, lifting, turning, twisting, and bending. She sometimes had difficulty pulling a shirt over her head because of her restrictions with reaching. (Tr. 311, 316, 322-25, 343, 346, 369.)

Plaintiff worked part time as a phone supervisor for Levy Restaurants. Her employer was very accommodating, flexible with absenteeism, and allowed her to leave work early and take extra breaks. Plaintiff needed two to three days to recover after working a shift. (Tr. 317-18, 321, 349.)

## 2. Evidentiary Hearing

ALJ Auble presided over an evidentiary hearing in March 2016 at which plaintiff was represented by counsel. Plaintiff testified she worked for Levy Restaurants two days per week, for a total of ten to twelve hours each week. (Tr. 51-52.) She answered phones while sitting down. (Tr. 62.) Plaintiff unexpectedly missed about two days of work each month due to her conditions. (Tr. 77.)

Plaintiff had chronic regional pain, arthritis, and reflex sympathetic disorder. She experienced pain in her lower back, right hip, and right leg, along with muscle weakness, muscle spasms, and fatigue. Her feet sometimes went numb and her legs tingled and burned. Her neurologist diagnosed her with an autoimmune disease, which he believed might have caused some of her symptoms. Plaintiff had arthritis in her upper back and unexplained pain in her lower back. (Tr. 62-64.)

Plaintiff explained she had a torn rotator cuff in her right arm, which appeared on an MRI the previous year. She received injections for her symptoms. Plaintiff had a limited range of motion on her right side. She previously had issues with her arm from a car accident, and the rotator cuff tear exacerbated the problem. (Tr. 67-68.)

## 3. Medical Records

Plaintiff's diagnoses throughout the relevant period include complex regional pain syndrome/reflex sympathetic dystrophy (CRPS/RSD)[1] involving the lower extremities, lower back pain with a myofascial component, right hip pain, right upper extremity pain, small fiber neuropathy, a history of labral debridement, a right rotator cuff tear, and a right hamstring tear.

---

[1] Type 1 CRPS, also known as RSD, "is a form of chronic pain that usually affects an arm or a leg," "typically develops after an injury, a surgery, a stroke or a heart attack," and "is out of proportion to the severity of the initial injury." Mayo Clinic, Complex regional pain syndrome, https://www.mayoclinic.org/ diseases-conditions/complex-regional-pain-syndrome/symptoms-causes/syc-20371151 (visited Mar. 14, 2018).

Plaintiff began treating with Dr. Heidi Prather at Washington University in June 2003. Plaintiff underwent a hip arthroscopy that same month and reported leg pain thereafter. Dr. Prather diagnosed her with CRPS. Plaintiff received steroid injections and sympathetic nerve blocks, participated in physical therapy, and tried medications such as Norco, Gabapentin, Percocet, and Lyrica, with no significant relief in her symptoms. Plaintiff walked with a cane and used crutches when her symptoms were especially bad.

Plaintiff first reported problems with her right upper extremity on April 8, 2011. She told Dr. Prather the extremity tingled and burned and was numb. On examination, plaintiff had painful motion in her shoulder, her external rotation was to twenty degrees with the elbow at the side, and she had diffuse allodynia through the upper extremity. Dr. Prather noted Tinel's at the wrist and elbow, bilaterally, and reflexes at 2+ for biceps, triceps, and brachioradialis. Plaintiff's strength was intact but she had sensitivity with all strength testing in the upper extremity. Dr. Prather planned to obtain an EMG. (Tr. 414-15.)

On April 15, 2011, plaintiff called Dr. Prather's office and stated her right arm was tingling and she could not raise it above her shoulder. (Tr. 652.)

Dr. Prather's office contacted plaintiff on April 18, 2011 to check on her symptoms. Plaintiff's right shoulder region was still painful and she had difficulty lifting her arm. She also experienced numbness, paresthesia, and a cold sensation in her right upper extremity. (Tr. 653.)

On March 3, 2013, plaintiff followed up with Dr. Prather and reported right shoulder pain. An ultrasound showed tendinopathy and a partial tear. Dr. Prather administered a subacromial injection. (Tr. 589.)

State agency consultant Dr. Vittal Chapa evaluated plaintiff on August 29, 2013. Motor strength in plaintiff's upper extremities was 5/5 and she had no muscle atrophy. (Tr. 485-87.)

6

On April 24, 2014, plaintiff presented to Dr. Prather and demonstrated pain on palpation of the right upper trapezius, middle trapezius, and paraspinal of the T6-T9 area. Dr. Prather assessed plaintiff with myofascial pain and administered trigger point injections. (Tr. 613.)

State agency consultant Dr. Adrian Feinerman evaluated plaintiff on June 10, 2014. Plaintiff had a decreased range of motion of the right shoulder. Her motor strength was 5/5 throughout. Dr. Feinerman assessed plaintiff with RSD and degenerative joint disease. (Tr. 501-07.)

Plaintiff called Dr. Prather's office on January 26, 2015 and stated the pain in her upper extremity was worsening and she could not lift anything. (Tr. 594.)

On February 4, 2015, plaintiff presented to Dr. Prather and reported numbness, burning, tingling, and color changes in the upper extremities. She had pain with shoulder abduction. An x-ray was normal. On examination, plaintiff demonstrated pain with supraspinatus testing in the thumb up and thumb down position; full external rotation of thirty degrees bilaterally with the elbow at the side; and internal rotation to the thoracolumbar junction. Strength testing was 5/5. Plaintiff had give-way weakness with pain on supraspinatus testing only on the right. Dr. Prather assessed plaintiff with right shoulder pain and noted, "Assess for possible upper extremity complex regional pain syndrome." Dr. Prather planned to obtain an ultrasound of plaintiff's shoulder. (Tr. 593.)

On February 10, 2015, a sonogram of plaintiff's right shoulder showed cuff tendinopathy with a thin linear intrasubstance tear. (Tr. 778.)

Plaintiff received a prescription for physical therapy on June 2, 2015, for her right shoulder. (Tr. 704.)

Plaintiff followed up with Dr. Prather on June 3, 2015, and complained her right shoulder

pain was worsening. She could not lift or abduct to the side. On examination, plaintiff had pain with shoulder abduction to ninety degrees at the side. She could go fully to 170 degrees on forward elevation. External rotation with the elbow to the side was 40 with pain, and she had pain with impingement sign. Dr. Prather diagnosed plaintiff with right shoulder pain and noted, "Assess for advancement of right rotator cuff tear." Dr. Prather planned to repeat an ultrasound of plaintiff's right shoulder and continue plaintiff's medications. (Tr. 572.)

A right shoulder sonogram from June 22, 2015, showed a small intrasubstance tear. Dr. Prather recommended subacromial injections and physical therapy. (Tr. 564-68.)

Plaintiff followed up with Dr. Prather on July 14, 2015, and reported right shoulder pain. On examination, plaintiff demonstrated pain with impingement of her right shoulder and pain with Hawkins. Dr. Prather assessed plaintiff with right shoulder pain with a history of subacromial bursitis and partial tear. Dr. Prather administered a subacromial space injection and referred plaintiff to a neurologist. (Tr. 560.)

Plaintiff presented to Dr. Glenn Lopate on November 5, 2015, for right eyelid ptosis. On physical examination, Dr. Lopate noted no muscle atrophy. Plaintiff's strength was 5/5 in her neck extensors, flexors, deltoids, biceps, triceps, wrist extensors, and finger extensors. Plaintiff was "slightly limited at the right shoulder and right leg due to rotator cuff and RSD respectively." (Tr. 822-24.)

Dr. Prather's last treatment note of record is dated March 2, 2016. Dr. Prather explained plaintiff had a new diagnosis, confirmed by nerve biopsy, of an unusual small fiber neuropathy called TSHDS, which causes chronic fatigue and pain in the bilateral lower extremities. Dr. Prather also noted plaintiff's history of lumbar radiculopathy and CRPS. Plaintiff's insurance was no longer taking on any new patients in plaintiff's state; Dr. Prather instructed plaintiff to

8

call her office once plaintiff had coverage so plaintiff could restart physical therapy. (Tr. 841.)

## **Analysis**

Plaintiff first argues the ALJ erroneously omitted from his decision virtually all of the evidence pertaining to plaintiff's right shoulder condition. "[A]lthough an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Moreover, the ALJ must articulate his reasoning such that the Court can conduct a meaningful review of his decision. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

The record in the instant case is replete with references to plaintiff's right shoulder impairments. In her agency forms, plaintiff stated she experienced pain in her right arm and had difficulty reaching and lifting. At the evidentiary hearing, plaintiff testified she tore the rotator cuff in her right arm, which resulted in a limited range of motion. She received injections to alleviate her pain. Plaintiff explained she initially injured the arm in a car accident many years before the alleged onset date. However, the rotator cuff tear exacerbated any pre-existing condition. The medical record also contains both subjective and objective evidence of plaintiff's shoulder impairments. Beginning in April 2011, plaintiff began reporting a burning and tingling sensation along with pain and numbness in her right shoulder. She continued to report these symptoms throughout the record. Plaintiff demonstrated pain and sensitivity of the upper extremity during several physical examinations and physicians noted a limited range of motion of her right shoulder. Ultrasounds from March 2013 and February and June 2015 evidenced tendinopathy and a partial tear. Plaintiff received subacromial injections for the shoulder and a prescription for physical therapy.

The ALJ made the following references to plaintiff's shoulder in his written decision:

- "On the Function Reports, she alleged inability to stand or walk for extended periods, *right arm issues*, leg weakness, inconsistent pain levels, and *inability to lift*, bend or crouch without pain. The claimant reported *pain in the right arm*, right leg, and right hip." (Tr. 28) (emphasis added).

- "On June 10, 2014, Adrian Feinerman, M.D., evaluated claimant for the state agency. The claimant reported *decreased range of motion in the right shoulder* and right hip." (Tr. 29) (emphasis added).

- "The record reflects *slight limitation at right shoulder* and right leg *due to rotator cuff* and reflex sympathetic dystrophy respect." (Tr. 29) (emphasis added).

The ALJ's recitation of the record excludes the overwhelming majority of the evidence related to plaintiff's shoulder injury. For instance, he did not mention the subacromial injections, physical therapy prescription, corroborating sonograms, or objective findings during examinations. In addition, he misstated that plaintiff reported a limited range of motion to Dr. Feinerman. Actually, Dr. Feinerman found that plaintiff had a limited range of motion in the right shoulder based on an examination. Moreover, although the ALJ restricted plaintiff's overhead reaching in the RFC, he did not explain why he included the limitation or what evidence supported the limitation.

By failing to simply acknowledge the evidence, the ALJ deprived the Court of any means to assess his reasoning process. *Moore*, 743 F.3d at 1124. The Court is not suggesting the ALJ should have reached a different conclusion regarding plaintiff's shoulder impairments. The error, here, is failing to address all of the relevant evidence. This error, alone, warrants remand. The Court will therefore not address plaintiff's remaining arguments.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and

reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**
**DATE:  March 15, 2018**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**